**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE GALECTIN THERAPEUTICS, INC. SECURITIES LITIGATION, | Case No.:  3:14-CV-00399-RCJ-WGC |
| DAVID L.HASBROUCK, derivatively on behalf of GALECTIN THERAPEUTICS, INC., | Case No.:  3:14-CV-00402-RCJ-WGC |
| Plaintiff, | |
| v. | AMENDED ORDER |
| PETER G. TRABER, JAMES C. CZIRR, JACK W. CALLICUTT, GILBERT F. AMELIO, KEVIN D. FREEMAN, ARTHUR R. GREENBERG, ROD D. MARTIN, JOHN F. MAULDIN, STEVEN PRELACK, HERMAN PAUL PRESSLER, III, and DR. MARC RUBIN, | |
| Defendants. | |
| And | |
| GALECTIN THERAPEUTICS, INC., | |
| Nominal Defendant. | |

This case arises from Galectin Therapeutics, Inc.'s ("Galectin") alleged violation of the Securities Exchange Act of 1934 ("the Exchange Act"). This case is the consolidation of multiple suits brought by Galectin shareholders claiming that Galectin engaged in securities fraud. There are various motions pending in this action, but the Court presently addresses only

1

Defendants' Motions to Transfer (ECF Nos. 23, 27) the case to the Northern District of Georgia. For the reasons contained herein, the motions are GRANTED.

**I.     FACTS AND PROCEDURAL HISTORY**

Galectin is a publicly-traded Nevada corporation with its principal place of business in Norcross, Georgia. (Callicutt Decl. ¶ 4, ECF No. 23-1). Galectin is a development stage company engaged in researching and developing therapies for fibrotic disease and cancer. (Compl. ¶ 2, ECF No. 1). As part of its business efforts, Galectin developed GR-MD-02, "a complex polysaccharide polymer for the treatment of liver fibrosis and fatty liver disease." (*Id.*). Plaintiffs allege that Defendants issued false and misleading statements regarding GR-MD-02 that caused Galectin's stock to trade at artificially inflated prices. (*Id.* ¶ 3). Specifically, Galectin issued a series of press releases claiming that GR-MD-02 provided certain benefits and was achieving exceptional results in clinical trials. (*Id.* ¶ 20). On July 24, 2014, an article was posted online by a company called Emerging Growth that claimed that Galectin was "nipping at [the] heels" of its competitors in developing an effective drug for treating fatty liver disease. (*Id.* ¶ 27). However, starting on July 25, 2014, news articles began to surface claiming that Emerging Growth was a stock promoting company that Galectin hired to entice investors to buy its stock. (*Id.* ¶¶ 30–32). On July 29, 2014, an article titled "Galectin Drug is a Fatty Liver Flop" was published on *TheStreet.com* claiming that GR-MD-02 was ineffective and that Galectin had misrepresented the drug's success. (*Id.* ¶ 34). As a result, Galectin's stock prices fell by nearly 69%. (*Id.* ¶ 36).

In response to the allegations that Emerging Growth was hired by Galectin to inflate the value of its stock, three separate class action lawsuits were filed in this District by shareholders of Galectin stock. Each plaintiff named Galectin as well as Peter Traber, Galectin's CEO, Jack

2

Callicutt, Galectin's CFO, and James Czirr, Chairman of Galectin's Board of Directors, as defendants (collectively "the Class Action Defendants"). The plaintiffs claimed that Galectin intentionally misrepresented the success of GR-MD-02 in violation of Section 10(b) and Section 20(a) of the Exchange Act. These actions were eventually consolidated into a single case ("the Class Action"). (Order to Consolidate, ECF No. 6). Shortly thereafter, the Class Action Defendants filed a motion to transfer venue to the Northern District of Georgia. (ECF No. 23). Prior to filing the motion, counsel for the Class Action Defendants contacted the attorneys of the individual plaintiffs to determine whether the plaintiffs would oppose the transfer. (Lee Decl. I ¶ 5, ECF No. 23-2). Counsel indicated that their clients did not oppose a transfer. (*Id.*). Based on this exchange, the Class Action Defendants represented that their motion was "unopposed."

Meanwhile, two other Galectin shareholders each filed a derivative lawsuit against Galectin's executive officers and members of its Board of Directors (collectively "the Derivative Action Defendants"), including Traber, Callicutt, and Czirr, claiming a violation of Section 14(a) of the Exchange Act and a breach of fiduciary duties. These cases were also consolidated and transferred to this Court ("the Derivative Action"). (*See Hasbrouck v. Traber et al.*, No. 3:14-cv-402-RCJ-WGC, ECF Nos. 32, 33). The Derivative Action Defendants also filed a motion to transfer venue in the Derivative Action. (ECF No. 27). As with the first motion, this motion was represented as "unopposed" because counsel for the plaintiffs in the Derivative Action indicated that their clients did not oppose the transfer. (Lee Decl. II ¶ 4, ECF No. 27-2). However, on October 2, 2014, an opposition to both motions to transfer was filed by the Castillo Group. (ECF No. 43). The Castillo Group was not a filing plaintiff in any of the original lawsuits that were consolidated, but it currently seeks to be "lead plaintiff" in the Class Action. The Castillo Group claims that its status as a potential class member and lead plaintiff in the Class Action gives it

standing to oppose transfer in the Class Action. The Castillo Group does not explain how it has standing to challenge the Derivative Action Defendants' motion to transfer. The Court, nevertheless, will consider its arguments.

## II.     LEGAL STANDARD

Under Section 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted). "The statute has two requirements on its face: (1) that the district to which defendants seek to have the action transferred is one in which the action might have been brought, and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005). The burden is on the party requesting transfer to demonstrate that these requirements are met. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

A motion to transfer venue "requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Factors to consider include "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* A court considering transfer may also weigh the "interest of conserving judicial resources and practical considerations which will facilitate a final resolution of the litigation in

an expeditious and inexpensive manner." *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 55 (D.D.C. 2000) (quoting *Harris v. Republic Airlines*, 699 F. Supp. 961, 962 (D.D.C. 1988)).

## III.   DISCUSSION

Although both the Class Action and the Derivative Action are filed under the same case number, they are technically two separate cases with a common factual nexus. Accordingly, the Court considers each motion separately to determine whether transfer is warranted in either case.

### A.  Motion to Transfer the Class Action (ECF No. 23)

"The 'preliminary inquiry is whether the action sought to be transferred is one that might have been brought in the transferee court.'" *In re ArtheroGenics Sec. Litig.*, No. 05 Civ. 00061, 2006 WL 851708, at *2 (S.D.N.Y. Mar. 31, 2006) (citation omitted). The Exchange Act allows for venue in any district "wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa. Galectin's principal place of business is located in the Northern District of Georgia and it certainly transacts business there. Accordingly, the Class Action could have been brought in that district. Therefore, the Court finds that the Class Action pending in this District "might have been brought" in the Northern District of Georgia. 28 U.S.C. § 1404(a). The Court now addresses whether a transfer would be for the convenience of the parties and in the interests of justice. *Amazon.com*, 404 F. Supp. 2d at 1259.

#### 1.  Convenience of the parties

The Class Action Defendants argue that the Northern District of Georgia is the forum most convenient to the parties in this litigation. The Court agrees. Most importantly, Galectin's headquarters and principal place of business is located in Norcross, Georgia. Traber and Callicutt are also residents of Georgia. Galectin further claims that it has no employees in Nevada and that all other employees that may potentially assist with this litigation are likewise

located in Georgia. (Callcutt Decl. ¶¶ 5–6).  In fact, of all the Class Action Defendants, it appears that only Czirr lives outside Georgia, though he does not live in Nevada.  Indeed, if the Class Action Defendants were required to defend themselves in Nevada, there is a "real risk of disrupting company operations" due to the amount of travel that may be necessary. *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006) (finding convenience of the parties a compelling reason for transfer where the individual defendants made up the core of the company's senior management).

On the other hand, it is unlikely that there would be any inconvenience imposed on the plaintiffs in the Class Action if it were transferred to Georgia.  Because this case involves the alleged violation of federal securities laws by a publicly-traded company, the plaintiffs will presumably be located all over the country. *See id.* (citation omitted) (stating that lead plaintiffs in a class action "are simply representatives of a putative class that will likely be 'geographically dispersed throughout the United States'").  The probable diversity of the plaintiffs' locations thus indicates that Georgia and Nevada are likely of equal convenience.  Moreover, it does not appear from the record that any of the filing plaintiffs reside in Nevada.  The Castillo Group asserts that it finds this District to be most convenient and would prefer to litigate the case in Nevada.  However, the Castillo Group is not currently a plaintiff in any of the consolidated cases.  Although it hopes to be named lead plaintiff in the Class Action, the Castillo Group is currently in the exact same position as a number of other groups and individuals also seeking to be named lead in this case against Galectin.  Since lead plaintiff's choice of forum is given only moderate weight when considering a motion to transfer a class action lawsuit, *see In re AtheroGenics*, 2006 WL 851708, at *3, the Castillo Group's preference is even less controlling.  Moreover, the Castillo Group does not claim to reside in Nevada, and it does not explain why it finds Nevada to

6

be the more convenient forum. Thus, the Court finds that the Castillo Group's choice of forum deserves little weight. Therefore, the Court finds that this factor weighs in favor of transfer.

### 2. Convenience of the witnesses

"The convenience of the witnesses is usually the most important factor to consider in deciding whether to transfer an action." *In re Yahoo! Inc.*, No. CV 07-3125CAS, 2008 WL 707405, at *3 (C.D. Cal. Mar. 10, 2008). The witnesses identified by the Class Action Defendants include a number of Galectin employees, all of whom are residents of Georgia. And as previously stated Traber and Callicutt, who undoubtedly will be key witnesses in this case, are both residents of Georgia. Indeed, all potential witnesses in the Class Action that have been identified live either in or near Georgia. (*See* Callicutt Decl. ¶¶ 4–5). To dispute this point, the Castillo Group asserts that employees of Emerging Growth are also likely witnesses in this case and that Emerging Growth is a Montana company with its employees residing in Montana. The Castillo Group, however, offers no declarations or other evidence to support these claims. Nevertheless, even if these assertions are true and Emerging Growth employees are called as witnesses in the Class Action, there is little difference in convenience between boarding a Reno-bound flight and boarding an Atlanta-bound flight beyond the travel time itself. Therefore, this factor weighs in favor of transfer as well.

### 3. Interest of Justice

#### a. Plaintiff's choice of forum

The plaintiff's choice of forum should be given considerable weight, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), and the burden rests with the defendant to demonstrate a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). But if the operative

7

facts have not occurred in the plaintiff's forum of choice and the forum has no particular interest in the parties or the subject matter of the case, "the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). Moreover, "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v*, 834 F.2d at 739.

In this case, the various plaintiffs who filed the initial lawsuits do not oppose the transfer of venue. Counsel to each of those plaintiffs affirmatively represented to the Class Action Defendants that their clients do not plan to challenge the transfer. (*See* Lee Decl. I ¶ 5). If the filing plaintiffs themselves are indifferent to this Court retaining the Class Action, then it is difficult to argue that their original choice to sue in this forum deserves deference. Moreover, even if the Castillo Group had been selected as the lead plaintiff before the Court ruled on this motion to transfer, its choice of venue would be accorded only moderate weight. *See In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998). Thus, the plaintiffs' choice of forum is a neutral factor here.

### b. Additional considerations

All additional considerations are either neutral or weigh in favor of transfer in this case. First, the location of relevant documents favors transfer. *See Jones*, 211 F.3d at 498 (identifying ease of access to sources of proof as a relevant factor to the transfer analysis). "Although the location of relevant documents may be of less significance in light of modern copying and reproduction technologies, it nonetheless retains at least some relevance to the venue inquiry." *In re Yahoo! Inc.*, 2008 WL 707405 at *9 (citation omitted). Here, the documents that will be required in this case are located either in hardcopy at Galectin's offices in Georgia or are electronically stored on servers there. (Callicutt Decl. ¶ 8). There will be, therefore, some

measure of increased costs to provide access to relevant documents and records in Nevada. *See In re Nematron*, 30 F. Supp. 2d at 404 (finding that the location of documents in Michigan favored transfer since extra costs would be incurred to copy and ship the documents to New York).  Second, Georgia is the "factual center of this case." *In re AtheroGenics*, 2006 WL 851708, at *3.  In securities fraud actions, "[m]isrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *In re Nematron*, 30 F. Supp. 2d at 404 (citation omitted).  Here, the press releases that contained the alleged misrepresentations were all prepared and disseminated from Galectin's headquarters in Georgia. (Callcutt Decl. ¶ 7).  Third, Nevada's connection with this litigation is minimal. Galectin is a Nevada corporation, but that is where the connection to this forum ends.  Galectin claims to have no employees located in the state and the record does not indicate that Galectin conducts any more business in Nevada than in any other state.  Certainly, Nevada has an interest in adjudicating a case involving the misrepresentations made by a company organized under its laws.  However, the Court finds that Georgia's interests are somewhat greater.  Galectin operates its business within Georgia and issued the alleged misrepresentations from its headquarters in Georgia.  Thus, in addition to its interest in adjudicating the alleged unlawful behavior of a company that conducts business within its borders, Georgia is also the "center of gravity" in this case. *See In re McDermott Int'l, Inc.*, No. 08 Civ. 9943 (DC), 2009 WL 1010039, at *5 (S.D.N.Y. Apr. 13, 2009) (holding that transfer was appropriate where the press release at issue was "generated and disseminated" from the transferee district).

Fourth, both forums are familiar with the applicable law.  Since the Class Action alleges violations of the Exchange Act, the federal courts in either district would have equal familiarity with the law.  Thus, this factor is neutral as to the Class Action.  Fifth, the availability of

9

compulsory processes to compel non-party witnesses is likewise a neutral factor in this case. Neither party has identified any potential non-party witness that would be unwilling to testify in this case. And even if the Castillo Group argued that employees of Emerging Growth are likely to be called as witnesses, nothing in the record indicates that this Court would be in a better position to issue a subpoena to a Montana resident than a court in the Northern District of Georgia. *See* Fed. R. Civ. P. 45(c)(1)(A) (stating that a court may "command a person to attend a trial, hearing, or deposition only within 100 miles of where the person resides, is employed or regularly transacts business").

Based on the foregoing, the Court, in its discretion, finds that transferring this case to the Northern District of Georgia serves the convenience of the parties and the witnesses, and is in the interest of justice. Therefore, Galectin's motion to transfer the Class Action is GRANTED.

### B. Motion to Transfer the Derivative Action (ECF No. 27)

As previously stated, when a court considers a motion to transfer venue, it must first determine whether the pending action could have been brought in the transferee district. *In re ArtheroGenics*, 2006 WL 851708, at *2. Since there is no opposition to the Derivative Action Defendants' motion, the Court is not presented with any arguments as to why the Derivative Action could not have been filed in the Northern District of Georgia.[1] Based on the Court's own review of the complaints in the individual consolidated cases, there does not appear to be any reason why a federal court in the Northern District of Georgia could not exercise jurisdiction over the Derivative Action or the individual Derivative Action Defendants. Therefore, the Court finds that the Derivative Action could have been brought in Georgia. *See* 28 U.S.C. § 1404(a).

///

///

---

[1] The Castillo Group does not address this point in its general opposition to transferring venue.

### 1. Convenience of the parties and witnesses

The arguments under the Derivative Action relating to the convenience of the parties and the witnesses are essentially identical to those evaluated under the motion to transfer the Class Action.  One variation that the Court notes is the location of a few members of Galectin's Board of Directors who are defendants in the Derivative Action.  In addition to Traber, Callicutt, and Czirr, the Derivative Action Defendants are comprised of Rod Martin, Gilbert Amelio, Steven Prelack, Kevin Freeman, Arthur Greenberg, John Mauldin, Paul Pressler, and Marc Rubin. (*See Hasbrouck v. Traber et al.*, Compl., ECF No. 1).  Amelio and Greenberg are both citizens of California, while Freeman, Mauldin, and Pressler reside in Texas. (*Id.* ¶¶ 23–25, 27, 29). Czirr resides in Idaho. (*Id.* ¶ 21).  Further, Martin is a citizen of Florida, Prelack is a citizen of Massachusetts, and Rubin is a citizen of New Jersey. (*Id.* ¶¶ 28–30).  Thus, with the exception Amelio, Greenburg, and Czirr the Derivative Action Defendants are located significantly closer to Georgia than to Nevada.  The plaintiffs in the Derivative Action are also located in different states, with at least one plaintiff residing in Ohio. (*Id.* ¶ 18).  It therefore appears that Georgia would be just as convenient a forum for the plaintiffs in the Derivative Action as for the Derivative Action Defendants.

Likewise, Georgia is a more convenient forum for the potential witnesses in the Derivative Action.  Traber and Callicutt will likely be key witnesses in the Derivative Action and they reside in Georgia.  Although Czirr and the other Board members, who are also probable witnesses in this case, are scattered across the country, they must not find Georgia to be an inconvenient forum because they collectively have requested that the Court transfer the Derivative Action to that district.  Once again, no other witnesses are identified that might find

11

Nevada a more convenient forum than Georgia. Therefore, these factors weigh in favor of transfer.

### 2. Interest of Justice

The analysis of whether transferring the Derivative Action would be in the interest of justice is quite similar to the analysis the Court conducted under the Class Action. As with class action lawsuits, the plaintiff's choice of forum in a derivative suit is given little weight. *See Lou*, 834 F.2d at 739. The Court finds this to be all the more true where the filing plaintiffs do not oppose a transfer, (*see* Lee Decl. II ¶ 4), and where the transferee forum appears to be more convenient for both the Derivative Action Defendants and the potential witnesses. Therefore, the plaintiffs' choice of forum in this case is a neutral factor.

Beyond the additional considerations that the Court discussed in its analysis under the Class Action, the Court identifies two more factors that influence whether transferring the Derivative Action would be appropriate. First, since the Court finds that transferring the Class Action to Georgia serves the parties, the witnesses, and the interest of justice, it makes sense to transfer this case as well so that multiple forums are not deciding similar, if not identical, factual and legal questions. *See Amazon.com*, 404 F. Supp. 2d at 1261 (citation omitted) (stating that the "[l]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplicitous litigation and inconsistent results"). Whether Galectin made misrepresentations or omissions regarding GR-MD-02 will be central to the Class Action, and that issue will also have important bearing on whether the Derivative Action Defendants breached their fiduciary duties. Accordingly, the Court finds that the Class Action and the Derivative Action "are similar enough

that they should be considered by the same court in order to conserve judicial resources and prevent inconsistent rulings." *Id.*  Therefore, this factor weighs in favor of transfer.

Second, while the Class Action deals primarily with Sections 10(b) and 20(a) of the Exchange Act, the Derivative Action will presumably involve elements of Nevada law regarding the fiduciary duties of corporate officers and directors.  This Court is undoubtedly more familiar with Nevada law than the Northern District of Georgia. *See Jones*, 211 F.3d at 498 (identifying familiarity with the controlling law as a factor to consider when determining whether transfer of venue is appropriate).  Nevertheless, "other federal courts are fully capable of applying [Nevada] law." *Foster v. Nationwide Mut. Ins. Co.*, No. C 07-04928 SI, 2007 WL 4410408, at *6 (N.D. Cal. Dec. 14, 2007).  If this case were transferred, the Court sees no reason why a federal court in Georgia could not effectively resolve the supplemental issues in this case that are controlled by Nevada law.  Thus, this factor either weighs against transfer or is neutral to the analysis.

After reviewing the aforementioned factors in this case, the Court determines, in its discretion, that transferring the Derivative Action would also best serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.  Therefore, the Derivative Action Defendants' motion to transfer venue is GRANTED.

///

///

///

///

///

///

Case 3:14-cv-00402-RCJ-WGC   Document 45   Filed 01/21/15   Page 14 of 14

## CONCLUSION

IT IS HEREBY ORDERED that the Class Action Defendants' Motion to Transfer (ECF No. 23) is GRANTED.

IT IS FURTHER ORDERED that the Derivative Action Defendants' Motion to Transfer (ECF No. 27) is also GRANTED.

IT IS FURTHER ORDERED that the Clerk shall TRANSFER the consolidated cases numbers 3:14-CV-00402-RCJ-WGC and 3:14-CV-00399-RCJ-WGC to the Northern District of Georgia and to close the cases administratively in this District.

IT IS SO ORDERED.

Dated:  January 21, 2015.

_____
ROBERT C. JONES
United States District Judge